IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTHEW J. CROUCH

    v.                :  Civil Action No. DKC 09-2544

CITY OF HYATTSVILLE, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case are four motions: (1) a motion to dismiss (Paper 5) filed by the City of Hyattsville and others, (2) a motion to dismiss or for summary judgment (Paper 7) filed by Defendants Glenn Ivey and the State of Maryland, (3) a motion for extension of time to file an opposition and to amend the complaint (Paper 14) filed by Plaintiff, and (4) a motion to amend the complaint (Paper 30) filed by Plaintiff. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to dismiss filed by the City of Hyattsville, et al. will be granted in part and denied in part and the motion to dismiss filed by Glenn Ivey, et al. will be granted. The motion for leave to file an amended complaint will be granted in part and denied in part, and the motion for an extension of time to file will be denied as moot.

## I.  Background

Plaintiff Matthew J. Crouch brings an action for violation of his civil rights stemming from the alleged use of excessive force and an unlawful arrest.  Plaintiff is an adult individual citizen of Maryland.  His complaint alleges that, shortly after midnight on the morning of September 29, 2008, Plaintiff and his friend Anthony Heidenberg ("Heidenberg") returned from College Park to Hyattsville by way of Queensbury Road.  (Paper 1 ¶ 13). They parked in front of a friend's house on 41st Avenue, but, after finding that he was not home, returned to their car. (*Id.*).  They noticed a red truck fail to stop at a stop sign at the corner of Queensbury and 41st Avenue, and they began to shout and gesture to the truck to slow down.  (*Id.*).  The driver of the truck then stopped in the middle of 41st Avenue to confront them.

Heidenberg approached the truck to tell the driver to "go away" and a white male jumped out with a handgun pointed at Heidenberg.  (Paper 1 ¶ 14).  The man began to assault Heidenberg, after which Plaintiff approached.  The man identified himself as an off-duty Hyattsville police officer and pointed his weapon at Plaintiff.  Plaintiff raised his hands to "surrender," but the officer then attacked Plaintiff in the course of arresting him, hitting Plaintiff multiple times with

his handgun. (*Id*.). This officer was later identified as Defendant Todd Prawdzik ("Prawdzik"), who at the time was an officer with the City of Hyattsville Police Department.

The beating rendered Plaintiff unconscious and left him bleeding profusely. (Paper 1 ¶ 15). An ambulance arrived to transport him to Washington Hospital Center, where he was diagnosed with severe open-head trauma and treated for lacerations and other injuries. He was then released to the D.C. Metropolitan Police Department and transported to the Fifth District precinct. (Paper 1 ¶ 16).

Plaintiff is an insulin-dependent diabetic. While at the police station, Plaintiff became ill from lack of insulin. Plaintiff was taken to Providence Hospital in the morning of September 30, 2008 for treatment with Novolog. (Paper 1 ¶ 17). After his visit to the hospital, Plaintiff was taken to his initial appearance and subsequently taken back to the Fifth District to await further proceedings. He then lost consciousness and was admitted to Howard University Hospital, where he was diagnosed with ketoacidosis from high blood glucose levels. He was held at Howard University Hospital for several days and was released on October 8, 2008. Plaintiff alleged that, following his release, he has experienced attacks of post-traumatic stress anxiety and has been under the care of a neuro-

psychiatrist for treatment from his severe head trauma. (Paper 1 ¶ 18).

Plaintiff made his appearance in the District Court of Maryland for Prince George's County on December 15, 2008. (Paper 1 ¶ 19; Paper 9, at 5 n.3).[1] Prawdzik, Corporal Kirk Pile ("Pile"), and several other officers all attended. The Hyattsville Police Department and State's Attorney obtained a continuance. (Paper 1 ¶ 19). Plaintiff alleges that after that date, police subjected him to harassment near his residence. (*Id.*). On February 27, 2009, the State entered a *nolle prosequi* in the case. (Paper 7, at 3).

Plaintiff filed a complaint in this court on September 29, 2009. (Paper 1). The original complaint was filed against eleven defendants: (1) City of Hyattsville ("the City"); (2) City Council of the City of Hyattsville ("the City Council"); (3) William Gardiner ("Gardiner"), in his capacity as Mayor of Hyattsville; (4) Douglas Holland ("Holland"), in his capacity as chief of police; (5) Officer Pile; (6) John Doe Police Officer 1; (7) John Doe Police Officer 2; (8) Prawdzik, (9) Glenn Ivey ("Ivey"), in his capacity as State's Attorney for Prince

---

[1] In his complaint, Plaintiff lists the date as October 14, but in later documents notes that the date he listed was incorrect.

George's County; (10) Jane Doe, Esq., in her capacity as assistant state's attorney; and (11) the State of Maryland ("the State"). (*Id.* at 1-2). The complaint asserts twelve causes of action. Counts one through five, asserted against Prawdzik alone, include a violation of civil rights under 42 U.S.C. § 1983, false arrest, false imprisonment, assault, and battery. Count six, malicious prosecution, is asserted against Prawdzik and others. In counts seven and eight, Plaintiff pleads claims of negligent hiring and supervision and gross negligence against Holland, Gardiner, and the City. Finally, Plaintiff asserts four additional counts against Prawdzik, the City, Gardiner, Ivey, Jane Doe, and the State, including defamation (count nine), false light (count ten), intentional infliction of emotional distress (count eleven), and state constitutional claims under Articles 24 & 26 of the Maryland Declaration of Rights (count twelve). (*Id.*).

Plaintiff did not serve the complaint upon all Defendants at once, and their Answers have trickled in over the period since the filing of the complaint. The following Defendants have filed Answers: Prawdzik (Paper 31), Pile (Paper 26), and the City, which filed a Partial Answer (Paper 4). Ivey filed a motion to dismiss on behalf of himself and the State on March 1, 2010. (Paper 7). The City Council, the City, Gardiner, and

Holland (collectively, the "City Defendants") all filed a joint motion to dismiss on February 23, 2010. (Paper 5). Plaintiff has filed oppositions to both motions to dismiss, and Defendants have replied. On June 20, 2010, Plaintiff filed a motion for leave to file a first amended complaint. (Paper 30). Defendants have not filed any opposition to that motion.

Because the motions to dismiss affect the motion to amend, the court will consider those motions first.

## II. Motions to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or

"naked assertion[s] devoid of further factual enhancement."
*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal
citations omitted).

The court must consider all well-pled allegations in a
complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994),
and must construe all factual allegations in the light most
favorable to the plaintiff. *See Harrison v. Westinghouse
Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing
*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).
The court need not accept, however, unsupported legal
allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873
(4th Cir. 1989), legal conclusions couched as factual
allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual
allegations devoid of any reference to actual events, *United
Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).;
*see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.
2009). "[W]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the
complaint has alleged, but it has not 'show[n] . . . that the
pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950
(quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a
complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B.   Motion to Dismiss by City Defendants

The causes of action against the City in the complaint are counts seven through twelve.   It has filed an Answer with respect to count twelve.[2]   (Paper 4).   Counts seven through twelve are also asserted against Gardiner; counts six and seven are additionally alleged against Holland.   Initially, City Defendants state that the City Council is not a legal entity separate and apart from the municipal corporation known as the City of Hyattsville, and so Defendants assume that Plaintiff intended to assert his claims against the municipal corporation itself as an entity.   (Paper 5, at 2 n.2).   They note that the same can be said of Gardiner, although Paragraph 11 of the complaint seems to indicate that Plaintiff intends to assert a claim against Mayor Gardiner in both his individual and official capacity.   (*Id.*).

City Defendants claim that, as a municipal corporation, the City is immune from liability under state law for acts or omissions that are governmental, as opposed to proprietary.   On

_____

[2] In its motion to dismiss, the City acknowledges that it is "potentially vicariously liable for state constitutional torts committed by" Prawdzik and that count twelve states "a potential claim for relief against" the City.

the other hand, City Defendants claim that the counts against
Gardiner and Holland fail as a matter of law due to statutory
public official immunity.

    **1.   Governmental Immunity**

The doctrine of governmental immunity is "deeply ingrained
in Maryland law" and may not be waived without express or
implied statutory authorization. *Nam v. Montgomery Cnty.*, 127
Md.App. 172, 182 (1999).[3] The doctrine provides immunity from
common law tort suits for governmental, as opposed to
proprietary, acts. *DiPino*, 354 Md. at 47; *see also Ashton v.
Brown*, 339 Md. 70, 101 (1995) (citing *Clea v. City of Baltimore*,
312 Md. 662, 667 (1988)). Any municipality exercising a
governmental function, such as a city, is entitled to
governmental immunity. *Nam*, 127 Md.App. at 183 ("When the state
gives a city or county part of its police power to exercise, the
city or county to that extent is the state."). "The operation
of a police force is a governmental function." *Hector v.
Weglein*, 558 F.Supp. 194, 206 (D.Md. 1982) (citations omitted).

Thus, a city is immune as to common law tort claims
asserted against it based on torts committed by its police

---

    [3] The Local Government Tort Claims Act, which does impose a
degree of liability on local governments, does not waive
governmental immunity. *See Khawaja v. Mayor & City Council,
City of Rockville*, 89 Md.App. 314, 325 (1991).

officers. *Gray-Hopkins v. Prince George's Cnty., Md.*, 309 F.3d 224, 234 (4th Cir. 2002); *DiPino*, 354 Md. at 47; *Williams v. Prince George's Cnty.*, 112 Md.App. 526, 553-54 (1996).[4] As such, governmental immunity bars the claims asserted against the City (and City Council) in counts seven through eleven. Count twelve, which asserts state constitutional violations, will remain in place as against the City. *See DiPino*, 354 Md. at 53 (stating that governmental entities may be held liable for constitutional violations by their agents under *respondeat superior* theory).

### 2. Public Official Immunity

Maryland statutory law grants Gardiner and Holland some degree of immunity as well. "In Maryland, public official immunity is recognized both at common law and by statute." *City of District Heights v. Denny*, 123 Md.App. 508, 516 (1998). Although Gardiner and Holland attempt to rely on the latter type (Paper 5-1, at 4-5), some understanding of common law immunity is necessary to understand the statutory type.

Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1) states:

---

[4] It makes no difference that Plaintiff's tort claims allegedly "arise from the flagship claim alleging a violation of constitutional rights." (Paper 9, at 4). Plaintiff may obtain relief for the alleged violation through count twelve.

An official of a municipal corporation,[5] while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Maryland courts have "pointed out that the purpose of these provisions was to codify existing public official immunity, and not to extend the scope of qualified immunity beyond its Maryland common law boundaries." *Houghton v. Forrest*, 183 Md.App. 15, 40 (2008), *rev'd on other grounds by* 412 Md. 578 (2010) (stating that Section "5-507's legislative history indicates that it does not apply to intentional and constitutional torts"); *see also Prince George's Cnty. v. Brent*, 414 Md. 334, 355 (2010) ("The immunity contemplated in [Section 5-507] is common law public official immunity."); *Lee v. Cline*, 384 Md. 245, 259 n.2 (2004) (quoting *Lovelace v. Anderson*, 366 Md. 690, 704 (2001)) (internal quotation marks omitted). Common law public official immunity does not apply to intentional or constitutional torts. *Houghton v. Forrest*, 412 Md. 578, 586 (2010) (common law public official immunity does not apply to intentional torts); *Okwa v. Harper*, 360 Md. 161, 201 (2000)

---

[5] "Municipal corporations are cities, towns, and villages created under any general or special State law and are subject to Article XI-E of the Maryland Constitution." *Houghton*, 183 Md.App. at 34. The City of Hyattsville is such a corporation.

11

(common law public official immunity does not apply to constitutional torts).  Therefore, although the statutory text contains no indication that statutory immunity was not intended to apply to intentional or constitutional torts, the court will nevertheless decline to apply them to those types of torts.

Admittedly, the statutory text is susceptible to the broader reading that Gardiner and Holland give it.  Moreover, as the Fourth Circuit has observed, the Maryland Court of Appeals has not directly decided this issue.  *See Gray-Hopkins*, 309 F.3d at 233 n.3.  Even so, this court must defer to the few hints that have been provided and the interpretation that Maryland courts have suggested.  *Wilson v. Kittoe*, 337 F.3d 392, 399 (4th Cir. 2003).  As such, public official immunity will not bar the intentional tort claims lodged against Gardiner in counts nine, ten, and eleven, or the constitutional claim lodged against Gardiner in count twelve.

Counts seven and eight, however, assert only negligence claims.  Thus, statutory public official immunity will apply unless Plaintiff can demonstrate that Gardiner and Holland acted with malice.  The malice required to strip away statutory immunity is "actual malice."  *Shoemaker v. Smith*, 353 Md. 143 (1999); *Hector*, 558 F.Supp. at 194.  Actual malice under Maryland law means "conduct characterized by evil or wrongful

motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud," and may be present even when "the conduct is objectively reasonable." *Lee v. Cline*, 384 Md. 245 (2004) (citations omitted).

In order to survive a motion to dismiss, Plaintiff's complaint must have alleged facts rising to a level of actual malice on the part of Gardiner and Holland. Nowhere in the complaint does Plaintiff use the term "malice," or any term implying such a sentiment, to describe acts by either Defendant. He claims merely that "Defendants knew or had reason to know of Defendant Prawdzik's abusive and violent history" and that he "was likely to abuse his position of authority." (Paper 1 ¶ 48). The complaint also alleges that Holland and Gardiner had conducted internal investigations and had "specific, prior knowledge that Prawdzik had conducted previous assaults against members of the public." (Paper 1 ¶ 52). As this court recently explained, none of these assertions rises to the level of malice:

> Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations. *See Elliott v. Kupferman*, 58 Md. App. 510, 528, 473 A.2d 960 (1984)("[m]erely asserting that an act was done maliciously, or without just cause, or illegally, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and

> precision those facts which make the act malicious"); *Hovatter v. Widdowson*, No. CCB-03-2904, 2004 U.S. Dist. LEXIS 18646, at *23 (D.Md. Sept. 15, 2004) ("although the amended complaint repeatedly states that all of the defendants acted with malice towards [Plaintiff] . . . these bare legal conclusions are not binding on the court").

*Ames v. Harford Cnty.*, No. RDB 09-1929, 2010 WL 1791547, at *4 (D.Md. May 4, 2010). Plaintiff has not met the required standard. Therefore, the claims against Gardiner and Holland in counts seven and eight will be dismissed.

## C. Motion to Dismiss or for Summary Judgment by Ivey and the State of Maryland

Defendants Ivey[6] and the State (collectively, "State Defendants") move to dismiss or for summary judgment[7] on the claims against them, claiming immunity. The complaint states claims of malicious prosecution (count six), common law defamation (count nine), common law false light (count ten), common law intentional infliction of emotional distress (count

---

[6] In discussing claims against Defendant Ivey, the court will equate Ivey with the Office of the State's Attorney. Although Plaintiff only asserts a claim against Ivey and a "Jane Doe, Esq." in the first complaint, the amended complaint seeks to add two named attorneys working for Ivey. Because Plaintiff asserts no new facts against these attorneys in the proposed amended complaint that would change the outcome of the motion to dismiss, it would be futile to add them to the complaint.

[7] Because the court can determine from the face of the complaint that the claims against Ivey and the State must be dismissed, this motion is construed as a motion to dismiss.

14

eleven) and violation of state constitution Articles 24 and 26 (count twelve) against State Defendants.

### 1. Claims Against the State

The Eleventh Amendment bars suits in federal court for monetary damages against a state or state officials acting in their official capacity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003); *Lewis v. Bd. of Ed.*, 262 F. Supp. 2d 608, 612 (D.Md 2003). Three exceptions exist to a state's sovereign immunity and none of those exceptions are present in this case. First, a state may waive its immunity and consent to suit in federal court. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Although the State of Maryland has waived its sovereign immunity for certain types of actions brought in state court pursuant to the Maryland Tort Claims Act, *see* Md. Code Ann., State Gov't § 12-104, it has not waived its Eleventh Amendment immunity for actions brought in federal court, *see* Md. Code Ann., State Gov't § 12-103(2).

Second, immunity does not bar a suit against a state official when a plaintiff is seeking prospective relief to end a continuing violation. *Ex Parte Young*, 209 U.S. 123, 167 (1908). That exception does not apply in this case. Finally, Congress may validly abrogate a state's Eleventh Amendment immunity, but it has obviously not done so here. *Seminole Tribe of Florida v.*

15

*Florida*, 517 U.S 44, 55 (1996). Therefore, none of the possible exceptions apply in this case and the claims against the State must be dismissed. The claims against Ivey in his official capacity will also be dismissed – as such claims are simply another manner of suing the State.

**2. Claims Against Ivey (In His Personal Capacity)**

Ivey also argues that the claims filed against him in his personal capacity must be dismissed because he is entitled to prosecutorial immunity. (Paper 7, at 12). Plaintiff insists that Ivey's actions were "extra-prosecutorial" and that he was giving advice to the police department during the course of the hearing on December 15, 2009. (Paper 16, at 8). Plaintiff contends that Ivey should not receive immunity due to the types of actions he took throughout the proceeding. There are five counts against him: malicious prosecution, defamation, false light, intentional infliction of emotional distress, and violation of Articles 24 & 26.

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Similarly,

> as a matter of Maryland common law, . . . prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process -- evaluating whether

16

> to commence a prosecution by criminal
> information, presenting evidence to a grand
> jury in the quest for an indictment, filing
> charges, and preparing and presenting the
> State's case in court.

*Gill v. Ripley*, 352 Md. 754, 770 (1999); *cf. Springmen v. Williams*, 122 F.3d 211, 214 (4th Cir. 1997) ("While the Supreme Court has not extended absolute immunity to all legal advice by prosecutors, it has never hesitated to grant such immunity to prosecutors acting as [the prosecutor] did here - in their core role as advocates for the state. The primary check on prosecutors acting in that role lies in the judicial process, not in section 1983 suits."). The facts related to Ivey contained in Plaintiff's complaint all concern acts that fall well within the ambit of protected conduct described in *Gill*. The initial complaint seeks to hold Ivey liable for (1) his decision to initiate Plaintiff's prosecution and (2) his propagation of certain facts in the course of that prosecution. Such claims are textbook examples of claims foreclosed by prosecutorial immunity. *See Gill*, 352 Md. at 764 (noting that prosecutorial immunity originally developed in cases involving malicious prosecution and defamation claims).

Even if prosecutorial immunity did not apply, Plaintiff has inadequately pled each of his claims against Ivey and dismissal would be appropriate under Rule 12(b)(6).

To state a viable malicious prosecution claim in Maryland, Plaintiff must show:

> (1) that a criminal proceeding was instituted or continued by the defendant against the plaintiff, (2) that the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause for the proceeding, and (4) malice, meaning that a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice.

*DiPino*, 354 Md. at 54. Plaintiff asserts facts that support only the first three prongs of this test in his complaint. He discusses the criminal proceeding and he notes that the state entered a *nolle prosequi* in his favor, which supports factors two and three. Nowhere, however, does he assert facts sufficient to show evidence of malice on the part of Ivey or anyone else in the Office of the State's Attorney. Plaintiff has therefore failed to state a prima facie case.

Plaintiff also attempts to argue that Ivey defamed Plaintiff and placed his name in a false light because Plaintiff's case was published on the Maryland Judiciary Case Search ("MJCS") (which Plaintiff refers to as the Courts and Judicial Information System). To present a *prima facie* case of defamation under Maryland law, Plaintiff must establish four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the

defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007). To establish a *prima facie* case of false light under Maryland law, Plaintiff must show: (1) the false light in which he was placed would be highly offensive to a reasonable person; and (2) Ivey had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed. *Holland v. Psychological Assessment Res., Inc.*, 482 F.Supp.2d 667, 681 (D.Md. 2007) (internal citations and quotations omitted). "Publicity consists of communication to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Mayer v. Safeway, Inc.*, 398 F.Supp.2d 412, 429 (D.Md. 2005) (citing *Restatement (Second) of Torts* § 652D, cmt. A (1977)). In addition to the fact that the State's Attorney's office does not control the MJCS – courts control it – Plaintiff's complaint is missing a basic element of both torts: falsity. Although the charges against Plaintiff were ultimately dropped, he was in fact charged with a crime and the publication of that fact on MJCS was not false. Hence, there was no false statement or publicized falsity and Plaintiff has failed to state a claim for defamation or false light.

Plaintiff also brings a claim of intentional infliction of emotional distress against Ivey. To recover for intentional infliction of emotional distress, Plaintiff must be able to show that Ivey's conduct was (1) intentional or reckless, (2) extreme and outrageous, (3) causally connected to Plaintiff's emotional distress, and (4) the distress caused was severe. *Baltimore-Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 701 (2003) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). "Each of these elements must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175 (1989); *see also Arbabi v. Fred Myers, Inc.*, 205 F.Supp.2d 462, 466 (D.Md. 2002). There are no facts in the complaint to show that Ivey acted intentionally or recklessly to cause Plaintiff any emotional distress. Nor is there any hint of outrageous behavior by Ivey directed at Plaintiff. Most of the claim in fact refers to Prawdzik's behavior. Beyond those allegations, Defendant simply says that the other Defendants "acted to protect the police officer in question despite the gravity and severity of his conduct and to insulate him and themselves from accountability." (Paper 1 ¶ 66). This statement lacks specificity and does not provide any information

regarding how Defendants' behavior was extreme, outrageous, or intentional. Therefore, Plaintiff has failed to state a claim against Ivey.

Finally, in count twelve, Plaintiff alleges that Prawdzik, the Hyattsville Police Department, and other Defendants illegally seized and detained Crouch without a warrant and therefore abridged his rights and immunities guaranteed under Articles 24 & 26 in the Maryland Declaration of Rights. These facts in no way implicate the State or Ivey. Therefore, this count as well must be dismissed as to those defendants.

## III. Motion to Amend the Complaint

Plaintiff filed a motion to amend on June 20, 2010, well after Defendants filed motions to dismiss and answers. (Paper 30). Fed.R.Civ.P. 15(a) provides that, after 21 days have passed from the filing of a responsive pleading or Rule 12(b) motion, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Supreme Court has said that

> In the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., the leave sought to amend a

> complaint should, as the rules require, be
> "freely given." The grant or denial of an
> opportunity to amend is within the
> discretion of the district court, but
> outright refusal to grant the leave without
> any justifying reason appearing for the
> denial is not an exercise of discretion; it
> is merely abuse of that discretion and
> inconsistent with the spirit of the Federal
> Rules of Civil Procedure.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'" *Laber v. Harvey*, 438 F.3d 404, 426-27 (2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). By contrast, an amendment is not prejudicial if it merely adds an additional theory of recovery to the facts originally pled and is offered before any discovery has occurred. *Id.* (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

In this case, allowing the amended complaint will not cause undue delay, and there is no evidence of any bad faith or dilatory motive. Plaintiff has added new supporting information that was not readily available when he initially filed the complaint. The only real question is whether the proposed

amendment would be futile. The standard for futility is the same as a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (amendment is futile if the amended claim would fail to survive motion to dismiss). "Leave to amend should be denied on the ground of futility only when the proposed amendment is clearly insufficient or frivolous on its face." *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08CV288, 2009 WL 482474 at *4 (E.D.Va. Feb. 24, 2009) (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1986); *Oroweat Foods Co.*, 785 F.2d at 510).

Although he asserts many new facts in the amended complaint, the proposed amendment is still insufficient with respect to the claims dismissed above. The State will still have Eleventh Amendment immunity and the City will retain governmental immunity. The amended complaint does not include any facts indicating malice; statutory public official immunity therefore remains intact for Gardiner and Holland on the negligence claims. And, even with the new facts, the claims against Ivey still fail to state a claim.

Finally, Plaintiff seeks to assert an additional claim: conspiracy to deprive Plaintiff of constitutional rights under 42 U.S.C. § 1985. Plaintiff contends that the State's Attorneys entered into an agreement with the individual police defendants

to deprive Plaintiff of his constitutional rights. According to the amended complaint, these individuals procured Plaintiff's medical records and removed documents from Plaintiff's criminal file that were damaging to Prawdzik's credibility and the credibility of police officials to ensure that Plaintiff could not access them. (Paper 30, Ex. 2 ¶¶ 80-81).

Title 42 U.S.C. § 1985 has several sections. Although Plaintiff does not indicate under which section he seeks to invoke, the court will interpret his complaint as one under 42 U.S.C. § 1985(3). This section creates a cause of action for those who have been deprived of rights or privileges by two or more persons acting in a conspiracy. *See* 42 U.S.C § 1985(3). The Fourth Circuit has explained:

> The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971). Moreover, the law is well settled that to prove a section 1985 "conspiracy," a claimant must show an agreement or a "meeting of the minds" by defendants to

24

> violate the claimant's constitutional
> rights. *See Caldeira v. County of Kauai*,
> 866 F.2d 1175, 1181 (9th Cir. 1989), cert.
> denied, 493 U.S. 817, 107 L. Ed. 2d 36, 110
> S. Ct. 69 (1989); *see also Lenard v.
> Argento*, 699 F.2d 874, 882-83 (7th Cir.
> 1983), cert. denied, 464 U.S. 815, 78 L. Ed.
> 2d 84, 104 S. Ct. 69 (1983)(a civil
> conspiracy under section 1985 is a
> combination of two or more persons acting in
> concert to commit an unlawful act, the
> principal element of which is an agreement
> or single plan between the parties to
> inflict a wrong against or injury upon
> another).

*Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995). Even when all the facts stated are taken as true, Plaintiff simply does not allege sufficient facts to support a claim for violation of Section 1985(3). There is no information as to what rights Plaintiff was deprived of, as he simply says he was deprived of his "constitutional rights." Moreover, there is no allegation that Defendants were motivated by any discrimination. There is nothing wrong with the State's Attorneys were working with the police to investigate the crime they alleged Plaintiff committed; that is the function of the prosecutor as a part of the prosecutorial process. Simply stating that the prosecutorial process was a "ruse" and "fishing expedition" does not make it so. Conclusory statements such as these are inadequate to support the claimed violation and thus it would be futile to allow Plaintiff to amend his complaint to add this

25

cause of action. *See Gooden v. Howard Cnty.*, 954 F.2d 960, 969-970 (4th Cir. 1992) (noting that "courts have thus required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss").

The court will grant leave to amend with respect to any remaining Defendants.

Finally, the motion for an extension of time to file an opposition and for leave to file an amended complaint will be denied as moot. (Paper 14). Plaintiff filed his opposition and the court has now decided the issue of whether the complaint may be amended.

## IV.  Conclusion

For the foregoing reasons, Defendants' motions to dismiss will be granted in part and denied in part, and Plaintiff's motion for an extension of time will be denied as moot. Plaintiff's motion for leave to file an amended complaint will be granted in part and denied in part.  Those parties which have been dismissed will not be reinstituted and the additional asserted claim for a violation of 42 U.S.C. § 1985 will be struck.  All other amendments will be accepted.  A separate Order will follow.

            /s/
DEBORAH K. CHASANOW
United States District Judge