IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTHEW J. CROUCH                   :

      v.                               :   Civil Action No. DKC 09-2544

                              :

CITY OF HYATTSVILLE, MARYLAND,
et al.                              :

**MEMORANDUM OPINION**

Presently pending and ready for review in this civil rights case is the motion for leave to file second amended complaint filed by Plaintiff Matthew J. Crouch. (ECF No. 102). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion for leave will be denied.

I. **Background**[1]

   A. **Factual Background**

According to the Amended Complaint, shortly after midnight on the morning of September 29, 2008, Plaintiff and his friend Anthony Heidenberg drove from College Park to the home of one of their friends in Hyattsville by way of Queensbury Road. They parked on 41st Avenue near their friend's house. After finding

---

[1] As two opinions in this case have come before this one, some familiarity with the facts is assumed. *See Crouch v. City of Hyattsville*, No. DKC 09-2544, 2010 WL 3653345 (D.Md. Sept. 15, 2010); *Crouch v. City of Hyattsville, Md.*, No. DKC 09-2544, 2010 WL 4868100 (D.Md. Nov. 23, 2010).

that he was not home, they returned to their car. At that point, they saw a red truck fail to stop at a stop sign at the corner of Queensbury Road and 41st Avenue, and they began to shout and gesture to the truck to slow down. The driver of the truck stopped in the middle of 41st Avenue to confront them.

Heidenberg approached the truck to tell the driver to go away when a white male — later identified as Defendant Todd O. Prawdzik — jumped out with a handgun pointed at Heidenberg. According to the complaint, Prawdzik "began to assault Heidenberg repeatedly." (ECF No. 36 ¶ 19). Plaintiff then approached at which point Prawdzik identified himself as an off-duty Hyattsville police officer and pointed his gun at Plaintiff. Plaintiff raised his hands in the air to "surrender," but Prawdzik still "physically attacked [Plaintiff] to effect his arrest, striking him multiple times about the head with his handgun." (*Id.*). Plaintiff sustained severe, open-head trauma and was rendered unconscious and bleeding profusely.

An ambulance transported Plaintiff to Washington Hospital Center, where he was treated for lacerations, open-head trauma, and other injuries. He was then released to the District of Columbia Metropolitan Police Department and taken to the Fifth District precinct.

While at the police station, Plaintiff became ill from lack of insulin, as he is an insulin-dependent diabetic. On

September 30, 2008, after his initial appearance, Plaintiff was taken to Providence Hospital for treatment for his diabetes. Later, he was taken back to the Fifth District to await further proceedings. During those proceedings, Plaintiff lost consciousness. He was admitted to Howard University Hospital, where he was diagnosed with diabetic ketoacidosis from high blood glucose levels. Plaintiff was released from the hospital on October 8, 2008.

Plaintiff alleges that, following his release, he has experienced "persistent attacks of post-traumatic anxiety" and has been under the care of a neuro-psychiatrist for treatment for his head trauma. (*Id.* ¶ 23).

**B.   Procedural Background**

On September 29, 2009, Plaintiff filed a complaint in this court asserting twelve causes of action against eleven total defendants. (ECF No. 1). As a result of two motions to dismiss (ECF Nos. 5, 7) that the court granted in part, several Defendants were dismissed from the case, and some counts were dismissed as to the remaining Defendants (ECF No. 35). At the same time, the court granted a motion filed by Plaintiff for leave to file an amended complaint. (*Id.*). After one more motion to dismiss by Defendants was granted (ECF No. 49), the following Defendants remained in the case: (1) City of Hyattsville; (2) Prawdzik; (3) Corporal Kirk Pile; (4) John Doe

3

Police Officer; and (5) Lieutenant Mark Roski. The following claims remain: violation of civil rights under 42 U.S.C. § 1983, false arrest, false imprisonment, assault, battery, defamation, false light, and intentional infliction of emotional distress against Prawdzik alone; malicious prosecution against Prawdzik, Pile, Roski, and the John Doe Police Officer; and state constitutional claims under Articles 24 and 26 of the Maryland Declaration of Rights against City of Hyattsville.[2]

After these and other motions were resolved, on November 23, 2010, a scheduling order was entered. (ECF No. 50). The scheduling order was modified twice — once on May 27, 2011, and once on September 6, 2011 — to accommodate the parties' discovery needs. (ECF Nos. 63, 82).

Plaintiff filed the pending motion for leave to file a second amended complaint on December 22, 2011. (ECF No. 102). On January 9, 2012, Defendants opposed. (ECF No. 105). On January 20, 2012, Plaintiff filed a reply. (ECF No. 108).

## II. Analysis

The parties focus most of their attention on Federal Rule of Civil Procedure 15(a)(2). That rule provides that the court

---

[2] For the reasons stated in the court's September 15, 2010, memorandum opinion (ECF No. 34), the common law tort claims asserted against City of Hyattsville may not proceed. Unfortunately, the court's accompanying order did not dismiss those claims. (ECF No. 35). Those claims will be dismissed in the separate order following this memorandum opinion.

should "freely give leave" to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). Both parties, however, overlook an important complication: the modified scheduling order in this case set a deadline of June 17, 2011, for the amendment of pleadings; that deadline has long since passed. (ECF Nos. 62, 63). Although the scheduling order was modified once more, the deadline for the amendment of pleadings was not altered. (*See* ECF No. 82).[3] In consequence, Plaintiff must do more than satisfy Rule 15(a)'s liberal standard; he must first meet the mandates of Rule 16(b)(4), which calls for "good cause" to change a scheduling order. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298–99 (4th Cir. 2008); *see also Wilson v. Appalachian Power Co.*, No. 3:10-0445, 2011 WL 221656, at *1 (S.D.W.Va. Jan. 24, 2011) (applying two-step test employing Rules 16(b) and 15(a) in analyzing untimely motion for leave to amend); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D.Md. 2002) (same).

---

[3] Plaintiff argues that the court's September 6, 2011, order superseded the scheduling order rather than simply modifying it and that this "new" order "does not give a deadline for amending pleadings." (ECF No. 108, at 23). This argument makes no sense in light of the clear language of the court's order, which began: "PAPERLESS ORDER *MODIFYING* the Scheduling Order." (ECF No. 82) (emphasis added). Furthermore, Plaintiff's cited case in support of this argument is inapposite, as that case, *United States v. Halley*, 362 F.App'x 369 (4th Cir. 2010), concerned a fully amended criminal judgment order superseding a previous order.

Rule 16(b) focuses on the proposed amendment's timeliness and the reasons behind its tardy submission. *Rassoull*, 209 F.R.D. at 374. In particular, Rule 16(b) requires the movant to show that he acted diligently. *Id.* The court also considers whether the non-moving party could be prejudiced by the delay, the length of the delay, and whether the movant acted in good faith. *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768–69 (D.Md. 2010). All in all, the dictates of Rule 16(b) are not to be taken lightly. *See Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." (internal quotations omitted)).

Here, the parties offer no discussion of "good cause," and a review of the record suggests that it cannot be found.[4] According to Plaintiff's motion, Plaintiff seeks only to add two counts to the complaint: one claim under 42 U.S.C. § 1983 against City of Hyattsville as recognized and described in *Monell v. Department of Social Services*, 436 U.S. 658 (1978),

---

[4] Significantly, the amended complaint has been in place since September 15, 2010 and fact discovery closed December 16, 2011. Permitting Plaintiff to amend his complaint at this point in the proceedings would require not only that the deadline for the amendment of pleadings be modified, but likely that other deadlines be modified as well to accommodate additional discovery concerning any new claims.

6

and one claim under Articles 24 and 26 of the Maryland Declaration of Rights as recognized and described in *Prince George's County v. Longtin*, 419 Md. 450 (2011). (ECF No. 102, at 13).[5] Plaintiff appears to contend that he learned of facts supporting these claims for the first time during the course of discovery. (*Id.* at 1). But, at the same time, Plaintiff states that "the core operative facts of the [proposed] Second Amended Complaint are the same as those of the original Complaint," which contradicts the suggestion that new, previously unattainable information was gleaned during discovery. (*See id.* at 14).

As Defendants observe, as early as August 28, 2011, Plaintiff admitted that he was aware that he could assert a *Monell* claim. (ECF No. 105, at 3-4). On that date, Plaintiff sent a letter to Magistrate Judge William Connelly, who was overseeing the discovery process, regarding a dispute over the release of certain records to Plaintiff. (ECF No. 105-2). To support his contention that the records were discoverable, Plaintiff wrote: "Plaintiff has alleged facts in the [Amended] Complaint that would inferentially support a Monell claim." (*Id.* at 1). Plaintiff does not deny that this was the case.

---

[5] A *Longtin* claim is the Maryland state constitutional equivalent to a *Monell* claim, which is a creature of federal law. *See Longtin*, 419 Md. at 490-98.

7

And, in fact, Plaintiff even suggests that he could have asserted a *Monell* claim at the time he moved for leave to file the amended complaint in June 2010, if not earlier. (*See* ECF No. 108, at 7, 13).

Plaintiff's chief rationale for not including the *Monell* claim in the amended complaint appears to be that he did not yet have adequate evidence of that claim. (*See, e.g., id.* at 8 ("While Plaintiff had knowledge of misconduct by Defendant Prawdzik prior to the completion of discovery, he did not have sufficient evidence of acquiescence in that misconduct by the Hyattsville Police Department to bring the newly asserted municipal liability claims.")). Rule 8, however, does not place such stringent conditions on a party's right to plead a claim for relief. That rule merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A plaintiff need not prove his case in his complaint by "forecasting evidence." *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003); *see also Wachovia Bank, Nat'l Ass'n v. Preston Lake Homes, LLC*, 750 F.Supp.2d 682, 688 (W.D.Va. 2010) ("[A] complaint need not plead 'specific evidence or extra facts beyond what is needed to make the claim plausible.'" (quoting *Arista Records L.L.C. v. Doe*, 604 F.3d 110, 120-21 (2$^{d}$ Cir. 2010))); *Settle v. Balt. Cnty., Md.*, 34 F.Supp.2d 969, 997 n.8

8

(D.Md. 1999) (noting that a plaintiff "is not required to plead evidence"). The Federal Rules actually discourage the pleading of evidence. *Sewraz v. Morchower*, No. 3:08cv100, 2009 WL 211578, at *1 (E.D.Va. Jan. 28, 2009). Thus, the fact that Plaintiff may not have had sufficient evidence to prove a *Monell* claim before the deadline for the amendment of pleadings had no bearing on his ability to plead a *Monell* claim in a timely manner. This is true especially given that he was apparently aware of a potential *Monell* claim "since the inception of this case." (*See* ECF No. 108, at 13). There is simply no showing of good cause here to permit Plaintiff to amend his pleadings to add a *Monell* claim.

Although Plaintiff's motion addresses only *Monell* and *Longtin* claims, the attached proposed second amended complaint encompasses several more wished-for claims. In addition to adding the *Monell* and *Longtin* claims, the proposed second amended complaint would add § 1983, Articles 24 and 26, false arrest, false imprisonment, and intentional infliction of emotional distress claims against Pile and Roski. (ECF No. 102-1). It would also add City of Hyattsville Police Department as a defendant, reassert at least some (if not all) of the tort claims against City of Hyattsville, expand the scope of the §

1983 claim against Prawdzik, and add an "inadequate supervision claim" pursuant to § 1983 against City of Hyattsville. (*Id.*).[6]

Defendants characterize this inconsistency between Plaintiff's motion and the proposed second amended complaint as evidence of "Plaintiff's Misrepresentations to the Court." (ECF No. 105, at 4-5). The court trusts Plaintiff's explanation that this discrepancy was inadvertent. (*See* ECF No. 108, at 20-21). That fact, however, does not absolve Plaintiff of his responsibility to show good cause for allowing his proposed amendments. It was only after Defendants identified this discrepancy in their opposition that Plaintiff presented reasons why some of these additional amendments should be accepted. Because Plaintiff's arguments appear for the first time in their reply, the court is inclined not to consider them. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").[7] Not only does the

---

[6] The proposed second amended complaint would also drop the defamation and false light claims against Prawdzik. (*Id.*).

[7] Even if Plaintiff's arguments were considered, they would still not establish good cause. The reasons Plaintiff provides in the reply are technically reasons for requesting leave of court to amend the complaint and not reasons for seeking a modification of the scheduling order. None of the reasons address the *timeliness* of the motion. At best, Plaintiff points

careless lawyering by Plaintiff's counsel warrant this treatment, it is also a sign of a lack of diligence — without which the court is hard-pressed to conclude that good cause exists to modify the scheduling order. *See Rassoull*, 209 F.R.D. at 374.

Without good cause to modify the scheduling order per Rule 16, Plaintiff's arguments for granting leave to amend the complaint per Rule 15 need not be considered. In sum, Plaintiff's motion will be denied, and the amended complaint (ECF No. 36) will remain the operative complaint, subject to the court's various orders issued in this case.

### III. Conclusion

For the foregoing reasons, the motion for leave to file second amended complaint filed by Plaintiff Matthew J. Crouch will be denied. A separate order will follow.

                                                /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge

---

to deposition testimony that implicates Pile and Roski as to certain counts, though, notably, he never suggests that these depositions were delayed for reasons outside his control. Furthermore, Plaintiff admits that he already "suspected" Pile's and Roski's involvement and waited to incorporate them into the complaint only after he had "developed a sufficient factual basis." (ECF No. 108, at 20). As previously discussed, to amend his complaint, Plaintiff need not have waited until he had all the evidence he needed to *prove* his claims.